RECEPTION AND MEDICAL CENTER
DATE: 7-9-18
INMATE INITIALS: RK

FILED
2018 JUL 11 PM 1:09
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIST. FL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT D. KORNAGAY,
    Plaintiff,

vs.                         Case No.: 3:17-CV-795-J-34 MCR

SERGEANT J. WILBURN and
OFFICER T. DIEDEMAN,
    Defendants     /

## PLAINTIFF'S AMENDED MOTION IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

Come now, Plaintiff, Robert D. Kornagay, pro se, and hereby file his response in opposition to the Defendants' Motion to Dismiss. In support, Plaintiff states the following:

### PLAINTIFF'S COMPLAINT

As stated in Plaintiff's verified 42 U.S.C 1983 Complaint[1], page #6C at line #21, "plaintiff has exhausted all of his administrative remedies as to the claims set forth in his complaint." As it is evident that plaintiff's final appeal to the Secretary of Florida Department of Corrections was resolved on its merit and the issue was refferred to the office of the Inspector General. (See DOC. 15-1, Exhibit A, Formal grievance log #17-6-13354)

---
[1] The defendants have submitted materials outside of the Complaint, such as affidavits and documentary exhibits. Unless this court convert such motion into a motion for Summary Judgement, such materials should be ignored. See Rule 12(b), Fed. R. Civ. P. Nevertheless, plaintiff still files his response.

## THE DEFENDANTS' POSITION

1) The Defendants' position is that plaintiff's 42 U.S.C 1983 Civil Rights Complaint should be dismissed for failing to exhaust his administrative remedies.

The Defendants rely on the fact that plaintiff filed a "Emergency/Retaliation" grievance (log# 17-6-07887) on February 9, 2017, with the Secretary of Florida Department of Corrections as basis for asserting that plaintiff failed to properly exhaust his administrative remedies. Although the plaintiff's grievance was not considered an emergency by Secretary's office and plaintiff failed to resubmit the grievance (log# 17-6-07887), does not mean he failed to properly exhaust his administrative remedies, especially when the "Emergency/Retaliation" grievance (log# 17-6-07887) was not designed to exhaust his administrative remedies.

2) On February 9, 2017, while housed at another prison for medical treatment, Reception Medical Center, plaintiff filed an emergency/retaliation grievance (log# 17-6-07887) directly with the Secretary of Florida Department of Corrections. In this grievance, plaintiff gave a narrative of the incident that took place at Columbia C.I. on February 4, 2017. However, the basis of plaintiff's grievance, as explained in the first two lines of the grievance, was the threat posed against his life. He explained that he'll be killed soon by inmates and/or officers. Further on in the same grievance plaintiff specifically states the following:

"Although I'm at RMC right now for medical treatment, I know I'll be returned to Columbia C.I. and harm will come my way because I'm telling the truth about what happen." (See Doc. 15-2, Exhibit B, Formal grievance log# 17-6-07887)

Plaintiff asserts that his grievance, Log# 17-6-07887, was not designed, in attempt to exhaust his administrative remedies about the incident that took place at Columbia C.I. on February 4, 2017. The grievance was designed in attempt to save his own life, by having the Department of Corrections put a stop to plaintiff being transferred back to Columbia C.I. Once his lung was healed, and his medical treatment was over.

In Plaintiff's request for relief of his "Emergency/Retaliation" grievance, log# 17-6-07887, he requested to have the threat posed against his life investigated, to be allowed to speak to the Inspector General, have the video tape reviewed & perserved, and "My life be protected from the inmates and officers at Columbia C.I."

Unfortunately for inmates, the Secretary of the Department of Corrections don't consider the circumstances outlined in plaintiff's grievance as an emergency. However, the rejection of plaintiff's "Emergency/Retaliation" grievance is not detrimental to plaintiff's position, nor is the fact that plaintiff failed resubmit the "Emergency/Retaliation" grievance and give the names of the officers - he did not know. For one, as stated, plaintiff's grievances was not designed to exhaust his administrative remedies about the incident that took place. It was designed to prevent a incident from taking place if he was to be transferred back to Columbia C.I.. And secondly, there was no reason for plaintiff to resubmit his "Emergency/Retaliation" grievance because the issue of his grievance was resolved when he was transferred to Northwest Florida Reception Center instead of being transferred back to Columbia C.I.. Plaintiff simply could not name the Defendants in his grievance because he did not find out their names until

months later. (See Doc. 15-3, Exhibit C, Plaintiff's Declaration.)

## PLAINTIFF'S STEPS OF EXHAUSTING THE GRIEVANCE PROCESS

1) On February 7, 2017, plaintiff filed a informal grievance pertaining to the incident that occurred at Columbia Correctional Institution on February 4, 2017, involving two other inmates and the conduct of the guards on duty at the time of the incident.

After not receiving a timely response to his informal grievance, on February 18, 2017, plaintiff filed a informal grievance challenging the grievance coordinator's failer to make sure grievances are responded to in a timely matter. And in accordance with Florida Administrative Code, on February 18, 2017, plaintiff moved to the next level of the grievance process and filed a formal grievance to the warden of the Reception Medical Center (RMC). However, as of this date, plaintiff never received any receipt or response to his formal grievance as required by Florida Administrative Code. (See DOC. 15-3, Exhibit C, Plaintiff's Declaration.)

Once plaintiff never received a response to his formal grievance in a timely manner, he moved to the next level of the grievance process and filed a grievance to the Secretary of the Department of Corrections. However, as of this date, plaintiff never received any receipt or response to his formal grievance to the Secretary of DOC. (See Doc. 15-3, Exhibit C, Plaintiff's Declaration.)

2) After Concluding that the Department of Corrections was trying to cover up the incident that took place at Columbia C.I. on February

4 of 9

4, 2017, by only processing the grievances which relate to the video tape being saved and destroying any grievances plaintiff wrote in attempt to exhaust his remedies, plaintiff wrote a letter to the office of the Inspector General relating to the on going interference/interception of his informal and formal grievances. (See DOC. 15-4, Exhibit D, Plaintiff's letter to Inspector General[1] dated March 16, 2017, and the Chief Inspector General's response (log# 2017-03-27-0007) dated March 27, 2017)

3) With all of plaintiff's informal and formal grievances about the February 4, 2017, incident being intercepted, and plaintiff having no other means of exhausting his administrative remedies, plaintiff called the (TIPS) Hotline and reported the incident along with the fact that prison officials were intercepting all of his grievances about the issue. (See DOC. 15-3, Exhibit C, Plaintiff's Declaration.) Plaintiff's phone call sparked an overnight investigation. The very next day, he was interviewed by Ms. Knight from the Inspector General's office. During the <u>recorded interview</u>, plaintiff explained that all of his grievances about the February 4, 2017, incident were being intercepted, and the inspector, Ms.

---

[1] In plaintiff's letter he stated, "It is as if the grievance coordinators at RMC and NWFRC have been coached to stop all of my grievances related to this issue. As it is well known throughout the Department of Corrections, that a inmate cannot pursue his claims in civil court unless he exhaust his administrative remedies. I'm a inmate who knows the grievance procedure and have done everything in my power to follow the grievance procedure. But all of my grievances are being intercepted and I have no where else to turn."

Knight, directed plaintiff to keep filing grievances about the incident. And the plaintiff followed those directions.②

4) On March 5, 2017, plaintiff followed the directions of inspector Knight and filed another informal grievance about the February 4, 2017, incident. However, plaintiff, once again, never received a response to his informal grievance in a timely manner, as required per Florida Administrative Code. (See DOC. 15-5, Exhibit E and DOC. 15-6, Exhibit F, Mr. Washington and Mr. Smith's declaration.)

On March 15, 2017, plaintiff moved to the next step of the grievance process. He filed a formal grievance to the warden. (See Doc. 15-7, Exhibit G, Plaintiff's formal grievance (log #1703-125-112)) In the first few lines of plaintiff's formal grievance he explains the following:

"I, Robert D. Hornaday, hereby moves to the next level in the grievance process because prison officials at Columbia C.I. have failed to address my grievance in a timely manner. (In fact, none of my informal grievances about this issue has been answered.)"

On March 16, 2017, plaintiff's formal grievance, log# 1703-125-112, was responded to. However, the prison administration totally misconstrued and returned it without processing. As basis for rejecting plaintiff's formal grievance, log#1703-125-112, the prison administrators asserted that the grievance was a duplicate grievance of formal grievance, log#1703-125-043, which was received by the warden on March 7, 2017. As plaintiff pointed out to the Secretary of FDOC, in formal grievance log# 17-6-13354, the plaintiff now points out to this court that formal

---
② Plaintiff is required to follow directions of the prison officials responsible for investigating the claims in his grievance.

6 of 9

grievance, log# 1703-125-043, related to having the video recording of the February 4, 2017, incident stored and saved, while the formal grievance, log# 1703-125-112, related to and designed to exhaust plaintiff's administrative remedies about the incident. (See DOC. 15-1, Exhibit A, Formal grievance, log# 17-6-13354, And Compare DOC. 15-7, Exhibit G, Formal grievance, log# 1703-125-112, With DOC. 15-8, Exhibit H, Formal grievance, log# 1703-125-043) Plaintiff's two formal grievances were about two seperate issues and simply misconstrued by the prison administrators.

5) On March 22, 2017, plaintiff appealed the response of the rejection of formal grievance, log# 1703-125-112, to the Secretary of FDOC. In the first few lines of plaintiff's formal grievance to the Secretary of FDOC, log# 17-6-13354, plaintiff clearly informed the Secretary of the following situation:

"I, Robert D. Hornaday, hereby files this grievance about the matters that took place at Columbia C.I. and to point out that prison officials at NWFRC have misconstrued my formal grievance, log# 1703-125-112, as a Supplement to my approved formal grievance, log# 1703-125-043, which was based on having the videotape of the incident preserved. This resulted in grievance log# 1703-125-112 being returned without further processing."

As it is well established, that the Secretary of FDOC is the last step of the grievance process. Therefore, if the Secretary of FDOC overlooked any alleged untimelyness, mis-steps, or improper use of the grievance process, after considering the plaintiff's reasoning and evidence, and decided to make a ruling on the merits of the plaintiff's claim, as oppose to relying on a proceedual bar, the plaintiff has exhausted his administrative remedies.③

## PLAINTIFF'S FAILURE TO NAME DEFENDANT IN HIS GRIEVANCE

Plaintiff asserts that throughout the whole grievance process he was unable to name the Defendants because he simply did not know their names. It wasn't until months later that plaintiff came across other inmates, who were at Columbia C.I. and witnessed the incident, that he was provided with this information. (See Doc. 15-3, Exhibit C, Plaintiff's Declaration.) Plaintiff cannot be required to provide information he don't have. See Brown v. Sikes, 212 F.3d 1205, 1208 (11th Cir. 2000) (Prisoner need only include in a grievance all the information the prisoner reasonably can be expected to know; failing to identify a specific person does not prevent a later suit against that person.)

Futhermore, the Florida Administrative Code Sub-paragraph 33-103.005(2)(b) and paragraphs 33-105.006(2)(F), do not state that a prisoner must specifically name the defendants in a grievance. Rather, the rules only require that the included facts are accurately stated in a grievance. See Jones v. Bock, 127 S.Ct 910, 923, 549 U.S. 199 (U.S. 2007) ("the primary purpose of a grievance is to alert prison officials to

---

[3] The Secretary of FDOC responded to plaintiff's final grievance by stating, "Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling. As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied." (See Doc. 15-1, Exhibit A, Formal grievance log #17-6-13354)

8 of 9

a problem, not to provide personal notice to a particular official that he may be sued.")

## CONCLUSION

Based on the foregoing grounds and exhibits, this court should find that plaintiff have exhausted all of his administrative remedies, especially when considering that plaintiff's final grievance was ruled on its merit. See Gates v. Cook, 376 F.3d 323, 331 (5th Cir 2004) (holding that prison officials could not argue that a prisoner's grievances failed to comply with procedural rules when the officials had looked past the purported technical defect and rejected the grievance for substantive reason.)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail to Defendant's Attorney, Sean C. Barber, at 151 College Drive, Suite 1, Orange Park, Florida 32065, on this 9th day of July 2018.

/s/ Robert D. Hornaday
Robert D. Hornaday
DC# J13805
Reception and Medical Center
P.O. Box 628
Lake Butler, Fla 32054-0628