UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROBERT D. KORNAGAY,

                    Plaintiff,

v.                                              Case No. 3:17-cv-795-J-34MCR

OFFICER T. DIEDEMAN AND
SERGEANT J. WILBURN,

                    Defendants.

_____

**ORDER**

**I. Status**

     Plaintiff Robert D. Kornagay, an inmate of the Florida penal
system, initiated this action on July 12, 2017, by filing a Civil
Rights Complaint Form (Complaint; Doc. 1) pursuant to 42 U.S.C. §
1983. In the Complaint, Kornagay names the following individuals as
Defendants: (1) Officer T. Diedeman,[1] and (2) Sergeant J. Wilburn.
He asserts that the Defendants violated his Eighth Amendment right
when they failed to protect him from inmate assaults on February 4,
2017, at Columbia Correctional Institution (CCI). As relief,
Kornagay seeks compensatory, punitive and nominal damages as well
as declaratory relief.

     Before the Court are Defendant Wilburn's Motion to Dismiss
Plaintiff's Complaint with Prejudice (Wilburn Motion; Doc. 13), and

_____

     [1] See Order of Special Appointment; Redirecting Service of
Process Upon Defendant Diedeman (Order; Doc. 17) at 1 n.1
(directing the Clerk to correct the spelling of Defendant's name).

Defendant Diedeman's Motion to Dismiss Plaintiff's Complaint with Prejudice (Diedeman Motion; Doc. 20) with exhibits (Def. Ex.; Docs. 13-1 through 13-8; Docs. 20-1 through 20-7). The Court advised Kornagay that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. <u>See</u> Order (Doc. 17). Kornagay filed responses in opposition to the motions. <u>See</u> Motion in Opposition (Doc. 15) with exhibits (P. Ex.; Docs. 15-1 through 15-8); Motion in Opposition (Doc. 23); Amended Motion in Opposition to Defendants' Motion to Dismiss (Response; Doc. 27).

Also before the Court is Defendant Wilburn's Motion to Strike Portions of Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint with Prejudice for Failing to State a Cause of Action (Motion to Strike; Doc. 16). Kornagay filed a response in opposition to the motion. <u>See</u> Plaintiff's Motion in Opposition to Defendant's Motion to Strike (Doc. 18; Opposition). Accordingly, this matter is ripe for review.

## II. Complaint

Kornagay asserts that he was involved in a physical altercation with two inmates at approximately 11:45 a.m. through 2:45 p.m. on February 4, 2017, at CCI. <u>See</u> Complaint at 6-7. He describes the altercation as a knife fight that lasted over two and one-half hours as Defendants Diedeman and Wilburn "watched and cheered" from the officers' station. <u>Id.</u> at 7. He states that he

requested Defendants' help when he "became overwhelmed with the battle." Id. He avers that he explained to Defendants that he was tired and could not continue to hold off the inmates and therefore asked to leave the dormitory. See id. Kornagay quotes Diedeman's response: "You were looking like a real soldier, so don't turn into a pu**y now. Go see if you could get one of your home boys to help you, so you can turn this thing into a two on two." Id. Kornagay maintains that Defendants neither helped him, called for back-up assistance, nor ordered the assailants to put down their homemade knives. See id. According to Kornagay, Diedeman directed him to return to the wing, and one of the assailants "dashed" him with boiling hot water. Id.

Kornagay states that the armed assailants forced him to retreat into his cell and lock the door. See id. He maintains that Diedeman yelled over the intercom "stop being a pu**y," and then unlocked Kornagay's cell door. Id. at 8. According to Kornagay, Diedeman continued to press the unlock button in the officers' station to ensure that Kornagay could not lock his cell door again. See id. He avers that he "walked out of his cell only to find himself under the attack again." Id. He declares that he returned to his cell and locked the door to escape the armed assailants. See id. Kornagay asserts that Diedeman again unlocked the cell door and pressed the unlock button. See id. According to Kornagay, he left his cell again "only to find himself under attack and trapped,"

fled from the armed assailants, secured himself in another cell, and locked its door. Id. He asserts that the two inmates stood outside the cell with their weapons "ready and visible" and waved for the Defendants to unlock the cell door. Id. Kornagay maintains that Diedeman unlocked the cell door and pressed the unlock button a third time. See id.

Kornagay maintains that the inmate(s) stabbed him fifteen times with a homemade knife as "a direct result" of Diedeman unlocking the cell door. Id. at 9. Kornagay avers that he suffered a punctured left lung, second-degree chest burn, and excruciating pain. See id. He states that he was wheelchair-bound for a month, and spent over two weeks at the Reception and Medical Center (RMC) with a painful lung infection. See id. He declares that he suffers from mental anguish, emotional distress, anxiety attacks, sleeplessness, humiliation, embarrassment, and fear. See id. He asserts that videotape evidence supports his assertions, and attorney James V. Cook sent the Florida Department of Corrections (FDOC) Secretary and FDOC General Counsel a preservation notice and requested that they preserve the videotape and all evidence relevant to an anticipated legal action. See id. According to Kornagay, he exhausted his administrative remedies as to the claims. See id.

### III. Summary of Arguments

Defendants maintain that the Court should dismiss the Complaint with prejudice because Kornagay failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the 42 U.S.C. § 1983 lawsuit. See Wilburn Motion; Diedeman Motion. Kornagay opposes Defendants' Motions, and asserts that he exhausted his administrative remedies as to his claims against Defendants. See Response. He states that his final appeal to the FDOC Secretary was resolved on its merits, and the issue was referred to the Office of the Inspector General for an investigation. See id. at 1.

### IV. Exhaustion of Administrative Remedies

#### A. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in this Court by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Kornagay is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion

is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[2] 286 F.3d, at 1024. . . .

Id. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit

---

[2] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[3] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

## B. Exhaustion under Florida's Prison Grievance Procedure

The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate

---

[3] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

must submit an informal grievance to a designated staff member at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. <u>See</u> FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the Secretary of the FDOC by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6)(a). In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(6)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the

inmate to resubmit the grievance at the appropriate level. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary if he is not satisfied with the response. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(7).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(c). Additionally, Rule 33-103.011(4) provides:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the

> central office level of review, he shall be
> entitled to proceed with judicial remedies as
> he would have exhausted his administrative
> remedies. The Bureau of Policy Management and
> Inmate Appeals will nevertheless ensure that
> the grievance is investigated and responded to
> even though an extension has not been agreed
> to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(x). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t).

## C. Analysis of Kornagay's Efforts to Exhaust

In the Complaint, Kornagay asserts that the Defendants failed to protect him from the inmate assaults on February 4, 2017. He also avers that he fully exhausted his claims through completion of the administrative grievance process. Nevertheless, Defendants maintain that the Court should dismiss the claims against them because Kornagay failed to exhaust his administrative remedies, as required by the PLRA, before filing this § 1983 lawsuit. As the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id.[4]

Pavao, 679 F. App'x at 823-24. Within this framework, the Court will compare the factual assertions in Defendants' Motions[5] and those in Kornagay's Response. Thus, a chronology of Kornagay's exhaustion efforts is as follows.

Kornagay asserts that he submitted an informal grievance about the February 4, 2017 incident on February 7th. See Response at 4;

---

[4] Whatley, 802 F.3d at 1209.

[5] The factual assertions in Defendants' Motions are strikingly similar. See Wilburn Motion; Diedeman Motion.

P. Ex. C, Kornagay's Declaration, at 1-2. He declares that he submitted a formal grievance to the RMC Warden on February 18th when he did not receive a timely response to the informal grievance. See id. According to Kornagay, he never received responses to the informal and formal grievances.[6] See P. Ex. C at 2.

Kornagay submitted an emergency grievance to the FDOC Secretary on February 9th because he feared his life would be in danger if he was transferred back to CCI. See P. Ex. B, #17-6-07887; P. Ex. C; Def. Ex. 1. In the grievance, Kornagay described the February 4th incident, and requested an investigation, an interview with the Inspector, and preservation of the videotape. See id. The RMC mailroom received the grievance on February 13th, and the Bureau of Policy Management and Inmate Appeals (Bureau) received it on February 23rd. See P. Ex. B; Def. Ex. 1. On February 24th, the Bureau responded and returned it to Kornagay for failure to follow the grievance procedure. See id. The Bureau determined it was not an emergency and advised Kornagay that the institution should be given the opportunity to respond to the issue, and therefore, he needed to resubmit the grievance at the proper level

---

[6] Kornagay asserts he could not attach the grievances he submitted on February 7th and 18th because "once he put them in the locked grievance box he never received any kind of response to them," and they were never logged. Opposition at 5; see id. at 4 (citing FLA. ADMIN. CODE r. 33-103.005(4)(b) and (c)).

if he was within the allowable time frames for processing. <u>See</u> <u>id.</u> Kornagay states he did not submit the emergency grievance to satisfy the exhaustion requirement, but rather as an urgent means to "save his own life" by requesting that the FDOC not transfer him back to CCI. Response at 3.

On March 3, 2017, Kornagay submitted a formal grievance to the Warden and requested preservation of the videotape footage related to the February 4th incident. <u>See</u> P. Ex. H, Grievance #1703-125-043; Def. Ex. 2. On March 20, 2017, Classification Secretary K. Hauser stated in pertinent part:

> The issue of your complaint has previously been referred to the Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you.
>
> As action has been initiated, you may consider your request for administrative remedy approved from that standpoint. This does not constitute substantiation of your allegations.

P. Ex. H at 4; Def. Ex. 2. On May 8th, Classification Secretary K. Hauser submitted an amended response, stating in pertinent part:

> Your request for administrative remedy has been reviewed and evaluated and response provided by Alisha Washington Grievance Coordinator Columbia C.I.
>
> Video is kept for 30 days. The retained video of the incident was turned over to the Inspector General's Office.

> The issue of your complaint has previously
> been referred to [the] Office of the Inspector
> General for appropriate action. Upon
> completion of necessary action, information
> will be provided to appropriate administrators
> for final determination and handling. This may
> or may not result in a personal interview with
> you.
>
> As action has been initiated, you may consider
> your request for administrative remedy
> approved from that standpoint. This does not
> constitute substantiation of your allegations.

Def. Ex. 5 at 1.

Kornagay states that he described his thwarted exhaustion attempts in a March 16, 2017 letter to the Office of the Inspector General.[7] See P. Ex. D.

> I'm filing this complaint relating to the
> ongoing interference/interception of my
> informal and formal grievances.
>
> As of this moment, I have made multiple
> attempts to exhaust my administrative remedies
> by completing the three step process. But
> every time I file a[n] informal grievance
> relating to prison officials at Columbia C.I.
> helping the two inmates stab me 13 times on
> February 4, 2017, the grievance comes up
> missing as if it was never filed. These
> grievances are not even being logged in.
>
> On February 7th and 18th, 2017, I filed
> informal grievances[8] about the mentioned
> issue - while housed at RMC. As of this date,
> I never heard anything back. In accordance
> with Chapter 33, I moved to the next level of

---

[7] A formal stamp on Kornagay's letter shows that Northwest Florida Reception Center (NWFRC) received his letter on March 20, 2017. See P. Ex. D.

[8] See Response at 4.

the grievance process and filed formal
grievances.[9] But as of this date, I never
received any receipt for the grievances, as
required by F.A.C. Chapter 33-103.006(5)(b),
or any kind of response. As of this date, the
only response I ever received was to a direct
formal grievance I wrote to the Secretary of
DOC as a[n] Emergency/Reprisal grievance, Log
# 17-6-07887.[10]

Since I have been at NWFRC, I have filed
multiple grievances about the mentioned issue.
But I'm experiencing the same problems. It is
as if the grievance coordinators at RMC and
NWFRC have been coached to stop all of my
grievances related to this issue. As it is
well known through out the Department of
Corrections, that a[n] inmate cannot pursue
his claims in civil court unless he
exhaust[ed] his administrative remedies.

I'm a[n] inmate who knows the grievance
procedure and has done everything in my power
to follow the grievance procedure. But all of
my grievances are being intercepted and I have
no where else to turn.

Id. at 2-3. The Office of the Chief Inspector General responded on

March 27th, in pertinent part:

The Office of the Chief Inspector General
received your complaint on March 27, 2017, in
which you expressed concerns about the
handling of your grievances at Columbia
Correctional Institution, Reception and
Medical Center, and Northwest Florida
Reception Center - Annex.

After having had the opportunity to
review your concerns, by copy of this letter,
we are referring your complaint to the
Inspector General for the Department of

---

9 See P. Ex. G; Def. Ex. 3.

10 See P. Ex. B; Def. Ex. 1.

15

> Corrections for review and action deemed
> appropriate.

Id. at 4, Chief Inspector General Correspondence #2017-03-27-0007.

According to Kornagay, he called the TIPS hotline and reported the February 4, 2017 incident as well as "the fact that prison officials were intercepting all of [his] grievances about the issue." P. Ex. C at 3; Response at 5. He states that Ms. Knight with the Inspector General's Office spoke with him the next day in a recorded interview. See id. He declares that Ms. Knight directed him to keep filing grievances about the incident. See P. Ex. C at 3; Response at 6. He maintains that he followed Ms. Knight's advice and submitted another informal grievance on March 5th, but never received a response. See Response at 6; P. Exs. E; F.

Kornagay asserts that he submitted a formal grievance to the Warden on March 15, 2017, complaining about the February 4th incident and requesting preservation of the videotape and an investigation. See P. Ex. G, Grievance #1703-125-112; Def. Ex. 3. In the grievance, he explained in pertinent part:

> I, Robert D. Kornagay, hereby moves to
> the next level in the grievance process
> because prison officials at Columbia C.I. has
> [sic] failed to address my grievance in a
> timely manner. (In fact, none of my informal
> grievances about this issue has been
> answered).

P. Ex. G at 1; Def. Ex. 3. On March 16th, Classification Secretary K. Hauser returned the grievance without further processing and stated in pertinent part:

> This is a duplicate grievance of grievance
> #1703-125-043 which was received on
> 03/07/2017. You will be responded to in a
> timely manner regarding this issue.
>
> Your grievance is being returned without
> further processing per ch. 33-103.014(1)(q)[.]
> The inmate has filed a supplement to a
> grievance or appeal that has already been
> accepted.[11] An exception will be made when
> the supplement contains relevant and
> determinative information that was not
> accessible to or known by the inmate at the
> time the original grievance or appeal was
> filed.

P. Ex. G at 4; Def. Ex. 3.

On March 21st, Kornagay submitted a grievance to the FDOC Secretary and requested preservation of the videotape footage. <u>See</u> Def. Ex. 5. On April 6th, W. Millette stated that the appeal was referred to the Warden for appropriate handling and action. <u>See</u> <u>id.</u> On March 22nd, Kornagay complained to the FDOC Secretary in grievance #17-6-13354 that NWFRC officers misconstrued grievance #1703-125-112 as a supplement to #1703-125-043. <u>See</u> P. Ex. A; Def. Ex. 4. He states that the grievances addressed separate issues: videotape preservation and the February 4th incident. <u>See</u> Response at 6-7; P. Exs. A; G; H; Def. Exs. 2; 3; 4. On April 6th, W. Millette responded as follows:

> Your appeal has been reviewed and evaluated.
> The subject of your grievance was previously
> referred to the Office of the Inspector
> General. It is the responsibility of that
> office to determine the amount and type of

---

[11] <u>See</u> P. Ex. H; Def. Ex. 2.

> inquiry that will be conducted. This
> inquiry/review may or may not include a
> personal interview with you. Upon completion
> of this review, information will be provided
> to appropriate administrators for final
> determination and handling.
>
> As this process was initiated prior to the
> receipt of your appeal, your request for
> action by this office is denied.

P. Ex. A at 4; Def. Ex. 4.

Kornagay acknowledges that, throughout the grievance process, he did not identify the officers or inmates involved in the February 4th incident because he did not know their names until months later. <u>See</u> Response at 3-4, 8. As to this issue, the United States Supreme Court has stated: "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones</u>, 549 U.S. at 218. The FDOC rules provide that the inmate must include accurately stated facts, and the grievance will be returned if it is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to." FLA. ADMIN. CODE r. 33-103.007(2)(e); 33-103.014(1)(b). Although Kornagay failed to identify the two inmates and the officers, he provided a detailed account of what transpired that day, including the locations and times. Moreover, the FDOC referred the issue to the Inspector General for an investigation.

Accepting Kornagay's responsive assertion (that he exhausted administrative remedies) as true, a dismissal is not warranted. As previously discussed, if dismissal is not warranted on the prisoner's view of the facts (first step), the court makes specific findings to resolve any factual disputes (second step), and should dismiss if, based on those findings, Defendants have shown a failure to exhaust. _Turner_, 541 F.3d at 1082-83. As to the second step in the two-part procedure, Defendants bear the burden of proving that Kornagay failed to exhaust his available administrative remedies as to Kornagay's Eighth Amendment claims against them. _See_ _id._ at 1082 (citation omitted). Defendants have not met their burden. On this record, Kornagay sufficiently exhausted the claims, and provided documentation showing that he notified the appropriate authorities when he did not receive responses to his informal and formal grievances. Notably, the FDOC referred the issues related to the February 4, 2017 incident to the Inspector General's Office for investigation. As such, Defendants' Motions as to exhaustion are due to be denied.

## D. Defendant Wilburn's Motion to Strike

Defendant Wilburn objects to Kornagay's assertions that the FDOC intercepted his grievances, and therefore moves to strike the allegations as scandalous pursuant to Rule 12(f)(2), Federal Rules of Civil Procedure (Rule(s)). _See_ Motion to Strike at 1. Kornagay filed a response in opposition to the motion. _See_ Opposition. Upon

review, the Court determines that the Motion to Strike is due to be denied because it is procedurally improper. Rule 12(f)(2) provides that, upon motion by a party, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, only material found in a "pleading" may be stricken pursuant to Rule 12(f). <u>See</u> <u>Jeter v. Montgomery Cty.</u>, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007). Rule 7(a) defines which documents constitute pleadings.[12] <u>See</u> <u>Scarborough v. Principi</u>, 541 U.S. 401, 417 (2004) (noting that Rule 7(a) "enumerat[es] permitted 'pleadings'"). A response in opposition to a motion to dismiss is not considered a pleading. <u>See</u> <u>Jeter</u>, 480 F. Supp. 2d at 1296 ("From Rules 12(f) and 7(a), it follows perforce that a response in opposition to a motion to dismiss is not a 'pleading.'"). Defendant's Motion to Strike is directed at Kornagay's response to his motion to dismiss - a filing that does not constitute a pleading. Thus, the remedy provided in Rule 12(f) is not available.

---

[12] Specifically, Rule 7(a) provides that "[o]nly these pleadings are allowed":

> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

In consideration of the foregoing, it is now

**ORDERED**:

1.    Wilburn's Motion to Dismiss Plaintiff's Complaint with Prejudice (Doc. 13) and Defendant Diedeman's Motion to Dismiss Plaintiff's Complaint with Prejudice (Doc. 20) are **DENIED**.

2.    Defendant Wilburn's Motion to Strike Portions of Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint with Prejudice for Failing to State a Cause of Action (Doc. 16) is **DENIED.**

3.    Defendants, **no later than October 17, 2018**, must answer or otherwise respond to the Complaint.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of September, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 8/23
c:
Robert D. Kornagay
Counsel of Record