# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| ROBERT D. KORNAGAY, | Case No. 3:17-cv-795-J-34MCR |
|       Plaintiff, | |
| vs. | |
| OFFICER T. DIEDEMAN, SERGEANT J. WILBURN, DEMETRIS AVANTS, and INSPECTOR PETER LINDBOE | |
|       Defendants. | |

## AMENDED COMPLAINT FOR DAMAGES

PLAINTIFF sues DEFENDANTS, and alleges:

### Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343.

2. Plaintiff's federal claims are predicated upon 42 U.S.C. §§ 1983 and 1988.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

4. All conditions precedent to this action have been performed or waived.

### Parties

5. At all times material hereto, ROBERT KORNAGAY was an inmate in the care and custody of the Florida Department of Corrections ("FDOC").

6. At all times material hereto, JEREMY WILBURN, was a Sergeant at Columbia Correctional Institution (Columbia C.I.), sued individually.

7. At all times material hereto, THOMAS DIEDEMAN, was a Corrections

Officer at Columbia C.I., sued individually.

8.  At all times material hereto, PETER LINDBOE, was an Inspector at

Columbia C.I., sued individually.

9.  At all times material hereto, DEMETRIS AVANTS, was a Prisoner at

Columbia C.I., sued individually.

## Common Allegations of Fact

10.  On February 4, 2017, Plaintiff was a prisoner at Columbia C.I.

11.  On that date, Plaintiff was attacked by two other prisoners, Carlton Daniels

and Demetris Avants, both armed with home-made knives.

12.  The attack took place in F-Dorm, Wing 3 between approximately 11:45 a.m.

to 2:45 p.m. within the ambit of F-Dorm's fixed wing video cameras.

13.  As the attack took place, Defendants Sgt. Jeremy Wilburn and Ofc. Thomas

Diedeman watched and cheered the fight from the officer's station.

14.  As Kornagay began to feel himself overwhelmed, he asked Wilburn and

Diedeman for help in escaping from his attackers.

15.  Diedeman called out, "You were looking like a real soldier so don't turn into

a pussy now. Go see if you can get your homeboys to help you so you can

turn this thing into a two-on-two."

16.  Columbia C.I. was an institution where officers, with the knowledge and

acquiescence of the Warden and Assistant Wardens and Chief of Security,

set up or encouraged fights between prisoners for entertainment.

17. Mr. Kornagay took refuge in a cell and secured it, but his attackers asked the officers, Wilburn and Diedeman, to pop the cell doors and they complied.

18. At no time did Wilburn and Diedeman call for back-up or order the attacking prisoners to disarm themselves and surrender.

19. Each time Kornagay sought refuge in a cell, one of the officers would pop the door, permitting Kornagay's attackers to get at him.

20. At some point, one of the attackers boiled water with a homemade heating device and threw the boiling water on Kornagay.

21. Kornagay sought refuge in a cell three times and each time the officers in the officers' station popped the cell doors open giving the attackers access.

22. As a result of the officers' overt intervention on behalf of Kornagay's attackers, he was stabbed 15 times and his left lung was pierced.

23. Diedeman and Wilburn threatened Kornagay with further physical harm if he reported the incident and told him what to say to the nurses.

24. After Kornagay was moved to another institution, he filed grievances which went unanswered, including a grievance while at the Reception and Medical Center, for treatment, asking that the video be preserved.

25. On February 27, 2017, Kornagay called the TIPS line the Northwest Florida Reception Center Annex, asking for the video to be reviewed.

26. On February 4, 2017, the day of the attack, Sgt. Michael Lunsford reviewed the surveillance video in F Dorm and observed Kornagay, Avants, and Daniels in a physical altercation with weapons involved.

27. These events were reported to the Office of the Inspector General that same day and assigned to Inspector Peter J. Lindboe on February 6, 2017.

28. On March 2, 2017, three days after Mr. Kornagay reported the events on the TIPS line, the case was upgraded to a criminal investigation.

29. Inmate Avants was interviewed on March 2, 2017 and claimed he didn't see any weapons and did not see anyone being stabbed.

30. Inmate Daniels said he saw Avants and Kornagay fighting and tried to stop the fight but was hit by Kornagay, who he hit back.

31. Daniels said he did not have a weapon or see Avants with a weapon.

32. In his report, Lindboe described the scene in the Dorm beginning at 12:32 p.m., with Kornagay, Avants, and Daniels appearing to argue.

33. Lindboe stated "the first punches thrown at 12:33 p.m" but doesn't say who threw the first punches.

34. Sgt. Wilburn and Ofc. Diedeman appeared in the quad for a few seconds.

35. At 12:43 p.m., Wilburn returned to the quad and sat on the back of a bench.

36. After Wilburn left, Kornagay and Daniels are "pacing the dayroom."

37. At 12:59 p.m., Kornagay went to his cell, another inmate entered the cell,

Kornagay went to another cell, returned to his cell, then went downstairs.

38. At 1:06 p.m., Kornagay returned to his cell and at 1:12 p.m., ran downstairs, fighting with Avants and Daniels for a few minutes, then went back upstairs.

39. At 1:23 p.m. Daniels left the quad and Kornagay and Avants fought.

40. At 1:34 p.m., Avants left the quad and reappeared at 1:46 p.m.

41. At 1:49 p.m., Kornagay reappeared.

42. Each time a prisoner left the quad, the door presumably had to be opened and closed by Diedeman or Wilburn in the officer's station.

43. At 1:50 p.m., Daniels filled a cup and threw liquid on Kornagay.

44. Kornagay closed his cell door and Daniels grabbed the handle.

45. Two minutes later, the door opened. Daniels and Kornagay fought.

46. Once again, Kornagay entered his cell and locked it; again the door opened.

47. It appeared that Avants asked Diedeman and Wilburn to open the cell.

48. Lindboe reported that "due to size limitations the video could not be loaded into IGIIS but "a copy will be maintained in the case file with another copy sent to the Regional Evidence Control Area.

49. Lindboe noted administrative violations to include a lack of security checks and counts during the attacks on Kornagay and other post order violations "to be addressed in a separate investigation."

50. Post Order Ten requires cell checks at least every 30 minutes.

51. One of the issues between Kornagay and his attackers was the theft from his cell of a grievance he was writing against Officer Thomas Diedeman.

52. Diedeman had been trying to extort Kornagay to buy him canteen items.

53. Avants had called Kornagay a "snitch" for trying to report Diedeman.

54. Avants was an inmate who had been groomed to do illicit favors for officers.

55. Avants was allowed to enter unauthorized areas such as the officers station.

56. Diedeman told Kornagay to say that he was stabbed behind the chow hall or he would go to confinement and be sprayed with chemical agents.

57. Diedeman admitted to being the officer who was popping the cell doors during the incident between Kornagay, Avants, and Daniels.

58. On August 14, 2017, Inspector Jason Vann took over the investigation of the case from Peter Lindboe and by the time Vann took over the case, the video reviewed by Lindboe had disappeared.

59. On information and belief, to be substantiated after additional discovery, Lindboe conspired with Diedeman and Avants to cover up Diedeman's extortion and failure to protect by destroying the video recording.

60. Based on the wrongful acts of the Defendants herein, Plaintiff suffered 15 stab wounds, a punctured lung, scald burns, and emotional distress.

61. Since Plaintiff has been forced to retain an attorney, Plaintiff is entitled to attorney's fees, as well as the costs of this action.

## Causes of Action

### I.   Failure to Protect under 42 U.S.C. § 1983 (Diedeman, Wilburn)

62.   Plaintiff is entitled to relief against Defendants Thomas Diedeman and

Jeremy Wilburn, for failure to protect Plaintiff in violation of the Eighth

Amendment to the U.S. Constitution, as further set out in the Common

Allegations of Fact, and as follows:

   a.  Defendants exposed Plaintiff to attacks by Avants and Daniels with no
       effort being made to give him assistance or call backup.

   b.  Defendants permitted inmates Avants and Daniels to freely go on and off
       the wing during their attack on Kornagay.

   c.  Defendants groomed Avants to do illicit favors for the officers and
       allowed him to move freely and even enter the officer's station.

   d.  Defendants failed to do cell checks or counts for at least a two hour
       period, signaling inmates that they were free to do what they want.

   e.  Defendants popped the cell doors wherever Mr. Kornagay tried to hide,
       exposing him again and again to his armed attackers.

63.   As a proximate result of Defendant's denial of protection, Plaintiff has

suffered significant physical injury, mental distress, humiliation, and pain,

and will continue to suffer such injuries in the future.

64.   As it was necessary for Plaintiff to retain the undersigned attorney to

represent him, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

### II.   Conspiracy to Deprive Plaintiff of Constitutional Rights under 42 U.S.C. § 1983 (Diedeman, Wilburn, Avants, Lindboe)

65.  Plaintiff is entitled to relief against Thomas Diedeman, Jeremy Wilburn, Demetris Avants, and Peter Lindboe, because in the course of the unconstitutional injuries suffered by Robert Kornagay, the Defendants conspired by concerted action to accomplish an unlawful purpose.

66.  In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity. More specifically Defendants reached an implicit or explicit understanding to engage in some or all of the following wrongful acts:

    a)  Agreed to aid each other in the commission of the wrongful acts

    b)  Agreed to aid each other in concealing the wrongful acts;

    c)  Agreed to coordinate and facilitate the attacks on Kornagay

    d)  Agreed to destroy evidence of extortion of Mr. Kornagay by Ofc. Diedeman in extorting Kornagay to buy him canteen items;

    e)  Agreed to fail to intervene in the wrongful acts of other persons, including inmates and officers, to physically harm Kornagay;

    f)  Agreed to delay timely disclosure of pertinent facts to investigators;

    g)  Agreed to hide and destroy and alter evidence;

    h)  Conspired other such ways as may be revealed by discovery or trial.

67.  Defendants pursued their own, independent interests which were largely criminal in nature and apart from those of their employer.

68.  This misconduct described in this Count was undertaken with malice, and deliberate indifference to the rights of others, including Mr. Kornagay.

69.   As a direct result of Defendant's deliberate indifference to Mr. Kornagay's constitutional rights, he suffered severe physical injuries.

70.   As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable attorney fees, as well as costs. WHEREFORE, Plaintiff seeks damages as noted below.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. compensatory damages against Diedeman, Wilburn, and Lindboe;

B. nominal damages where compensatory damages are limited by law;

C. punitive damages against all the individual defendants;

D. reasonable attorney's fees and costs as provided by law;

E. trial by jury for those counts so triable; and

F. such other relief as the Court deems just and proper.

Respectfully Submitted on 2/20/19,   *s/ James V. Cook_____*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com
Attorney for Plaintiff

I CERTIFY the foregoing was filed electronically on 2/20/2019, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*s/James V. Cook_____*