UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT D. KORNAGAY,

        Plaintiff,

v.

        Case No. 3:17-cv-795-J-34MCR

OFFICER T. DIEDEMAN,
SERGEANT J. WILBURN, and
INSPECTOR PETER LINDBOE,

        Defendants.

**ORDER**

**I. Status**

Plaintiff Robert D. Kornagay, an inmate of the Florida penal system, initiated this action on July 12, 2017, by filing a pro se Civil Rights Complaint (Doc. 1). Kornagay, with the benefit of counsel, filed an Amended Complaint (AC; Doc. 44) on February 20, 2019. In the AC, Kornagay asserts claims pursuant to 42 U.S.C. § 1983 against Defendants Thomas Diedeman, Jeremy Wilburn, and Inspector Peter Lindboe. He states that Defendants Diedeman and Wilburn violated his Eighth Amendment right when they failed to protect him from inmate assaults on February 4, 2017, at Columbia Correctional Institution (CCI). Additionally, he asserts that Defendants Diedeman, Wilburn, and Lindboe conspired to deprive him of his federal constitutional rights. As relief, Kornagay seeks compensatory, punitive and nominal damages as well as reasonable attorney's fees and costs.

This matter is before the Court on Defendant Lindboe's Motion to Dismiss Plaintiff's Complaint (Motion; Doc. 65). He submitted exhibits in support of the Motion. See Def. Exs., Docs. 65-1 through 65-2.[1] The Court advised Kornagay that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 5). Kornagay filed a response in opposition to the Motion. See Response to Defendant Lindboe's Motion to Dismiss (Response; Doc. 66). Thus, Defendant's Motion is ripe for review.

## II. Plaintiff's Allegations[2]

Kornagay asserts that Diedeman and Wilburn failed to protect him when they (1) exposed him to inmates Avants and Daniels' attacks without any effort to help or call for backup; (2) permitted Avants and Daniels to "freely" enter and exit the wing during the attack; (3) "groomed" Avants to do "illicit favors" for officers, and permitted him to "move freely" and enter the officers' station; (4) failed to do "cell checks or counts" for at least a two-hour period, thus "signaling" to inmates that they could do as they pleased; and (5) "popped" open cell doors at sites where Kornagay tried to hide, thus repeatedly exposing

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] The AC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the AC and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion to dismiss filed by Lindboe, the Court's recitation of the facts will focus on Kornagay's allegations as to Defendant Lindboe.

him to his "armed attackers." AC at 7. As to the underlying facts, Kornagay states that inmates Avants and Daniels, who were armed with homemade knives, attacked him on February 4, 2017. See id. at 2. He maintains that Defendants Diedeman and Wilburn "watched and cheered" the fight from the officers' station, and neither called for back-up assistance nor ordered the assailants to disarm and surrender. See id. at 2-3.

Next, Kornagay asserts that Defendants Diedeman, Wilburn, and Lindboe conspired when they agreed to (1) aid each other in committing and concealing wrongful acts; (2) coordinate and facilitate the attacks on Kornagay; (3) destroy evidence of Diedeman's extortion efforts; (4) not intervene in officers and inmates' harmful acts towards him; (5) delay the disclosure of pertinent facts to investigators; and (6) hide, destroy, and alter evidence. Id. at 7-8. According to Kornagay, Sergeant Lunsford reviewed the dormitory's surveillance video on February 4th and observed Kornagay, Avants, and Daniels in a physical altercation. See id. at 4. He avers that the incident was reported to the Office of the Inspector General and assigned to Defendant Lindboe on February 6th. See id. Kornagay states that he called the TIPS line on February 27th and asked for review of the video recording. See id. at 3. He asserts that the case was "upgraded" to a criminal investigation on March 2, 2017. See id. at 4. According to Kornagay, Lindboe described in his "report" what had transpired among the inmates and reported that "due to size limitations the video could not be loaded into IGIIS but []a copy will be maintained in the case file with another copy sent to the Regional Evidence Control Area." Id. at 4-5. He avers that Lindboe noted there were administrative violations, such as lack of security checks and counts. See id. at 5. Kornagay maintains that when

3

Inspector Jason Vann took over Lindboe's investigation on August 14, 2017, the video recording had disappeared. See id. He asserts that Lindboe destroyed the video recording and conspired with Diedeman and Avants to cover up Diedeman's extortion and failure to protect. See id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## IV. Summary of the Arguments

In the Motion, Defendant Lindboe requests dismissal of Kornagay's claims against him because Kornagay failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Motion at 2-7. In his Response, Kornagay asserts that he "fully exhausted" his administrative remedies prior to filing the lawsuit. Response at 4.

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Kornagay is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds

> out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[4] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[5] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true.

---

[4] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

[5] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

7

> The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33 103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33 103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See FLA. ADMIN. CODE r. 33 103.007. However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33 103.005(1); 33-

103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See FLA. ADMIN. CODE r. 33 103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. See FLA. ADMIN. CODE r. 33 103.007(3)(a).

### C. Kornagay's Exhaustion Efforts

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam).

Defendant Lindboe maintains that Kornagay failed to properly exhaust his administrative remedies as to deliberate indifference and conspiracy claims against him before filing the instant § 1983 lawsuit. See Motion 2-7. He states that Kornagay "filed no informal, formal, or appeal grievances related to any allegations against Defendant Lindboe, any allegations of a conspiracy . . . involving Defendant Lindboe, or any allegations regarding the alleged destruction of the video recording of the events of February 4, 2017." Id. at 7. In support of his position, Lindboe refers to the Declarations of Kathleen McClay and Lawanda Sanders. See Def. Exs., Docs. 65-1, Declaration of

9

Kathleen McClay (McClay Declaration); 65-2, Declaration of Lawanda Sanders (Sanders Declaration). In his Response, Kornagay asserts that he exhausted his administrative remedies before filing the lawsuit. See Response at 3-4. He states, in pertinent part:

> Defendant commits the error of thinking that exhaustion of remedies is a discrete process as to each and every defendant. That is not the case. Defendant Lindboe contends that Plaintiff must file a separate lawsuit as to him because he was not named, nor was his role known to Plaintiff when the lawsuit was originally filed on July 12, 2017. This, Plaintiff is more than willing to do if need be but Lindboe's contention is not the law. A lawsuit can evolve through the ongoing lawless conduct of a group of defendants over time. The Department of Corrections' grievance process is meant to put the Department on notice, not to exhaustively lay out causes of action or to name every possible past or future contributor to the evolving injustice and injury.

Id. at 3 (footnote omitted). According to Kornagay, the video recordings "mysteriously turn[ed] up missing" when Inspector Vann took over the investigation on August 14, 2017. Id. at 5. He maintains that "[t]he law is still spelled out in Jones v. Bock, 549 U.S. 199, 217 (2007) (nothing in the [PLRA] statute imposes a name all defendants' requirement)." Response at 4 (footnote and internal quotations omitted). Accepting Kornagay's view of the facts as true, a dismissal of the claims against Defendant Lindboe for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendant Lindboe's arguments regarding exhaustion and makes findings of fact.

In Arias v. Perez, the Eleventh Circuit held that a state inmate failed to exhaust his administrative remedies for his failure-to-protect claim against a corrections officer, and thus the PLRA precluded his § 1983 lawsuit against the officer because the inmate's

10

administrative grievances addressed a separate claim (transfer to a protective management unit) and did not address his failure-to-protect assertions. The Court stated, in pertinent part:

> We agree that [plaintiff] failed to exhaust his failure-to-protect claim against [defendant]. A prisoner must exhaust each claim that he seeks to present in court. See Jones, 549 U.S. at 219-20, 127 S.Ct. 910 ("All agree that no unexhausted claim may be considered.") The claim that [plaintiff] suffered an Eighth Amendment violation when [defendant] failed to protect him is distinct from the claim that he should be transferred to a protective management unit. [Plaintiff]'s filings addressed the latter—indeed, he ultimately received precisely the relief that he requested—but not the former. It would subvert the PLRA's purpose of granting prison authorities "time and opportunity to address complaints internally before allowing the initiation of a federal case," Porter,[6] 534 U.S. at 525, 122 S.Ct. 983, if a prison could grant all the relief a prisoner asked for and yet still find itself subject to suit.
>
> Our decision in Parzyck v. Prison Health Services, Inc., 627 F.3d 1215 (11th Cir. 2010), is not to the contrary. There, we explained that "[n]othing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." Id. at 1219. Here, [plaintiff]'s injuries were not simply "the continuation of a problem already raised"; they were a separate, even if related, problem. None of [plaintiff]'s grievances pursued a claim against [defendant] for failing to protect him, as distinct from requesting protection itself.

Arias, 758 F. App'x at 882.

Understandably, Kornagay asserts that he was not aware of the facts underlying his claims against Lindboe when he initiated the instant action, and that his claims against

---

[6] Porter v. Nussle, 534 U.S. 516 (2002).

11

Lindboe evolved over the course of the litigation. See Response at 3-5. Nevertheless, a prisoner must exhaust each claim that he seeks to present in court prior to initiating a lawsuit. See Jones, 549 U.S. at 219. The Court finds that Kornagay's deliberate indifference and conspiracy claims against Lindboe are not simply a continuation of a problem that Kornagay had already raised in earlier grievances. Instead, Kornagay's claims against Lindboe are separate and distinct from his claims against Defendants Diedeman and Wilburn and arise from separate acts committed later in time. Kornagay's initial grievance of the alleged failure to protect could not have put prison authorities on notice of a distinct violation by a different person that had not even occurred yet.[7] As such, the PLRA requires that Kornagay exhaust his claims against Lindboe before filing a lawsuit in federal court.[8] Thus, Defendant Lindboe's Motion is due to be granted.

---

[7] See Order (Doc. 29) (finding that Kornagay "sufficiently exhausted" his claims against Defendants Diedeman and Wilburn and denying Defendants' requests for dismissal based on exhaustion).

[8] Kornagay's assertion that the McClay and Sanders Declarations "are without effect" because neither FDOC employee claims to be a records custodian, Response at 7, is unavailing. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated.").

Therefore, it is now

**ORDERED**:

1. Defendant Lindboe's Motion to Dismiss Plaintiff's Complaint (Doc. 65) is **GRANTED,** and Kornagay's claims against Lindboe are dismissed without prejudice to his right to initiate a new civil rights case, if he elects to do so, after he has exhausted his administrative remedies.

2. The Clerk shall terminate Inspector Peter Lindboe as a Defendant in the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of October, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 10/28
c:
Counsel of Record