UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT D. KORNAGAY,

          Plaintiff,

v.

          Case No. 3:17-cv-795-J-34MCR

OFFICER T. DIEDEMAN and
SERGEANT J. WILBURN,

          Defendants.

## ORDER

### I. Status

Plaintiff Robert D. Kornagay, an inmate of the Florida penal system, initiated this action on July 12, 2017, by filing a pro se Civil Rights Complaint (Doc. 1). Kornagay, with the benefit of counsel, filed an Amended Complaint (AC; Doc. 44) on February 20, 2019. In the AC, Kornagay asserts claims pursuant to 42 U.S.C. § 1983 against Defendants Thomas Diedeman and Jeremy Wilburn.[1] He states that Diedeman and Wilburn violated his Eighth Amendment right when they failed to protect him from inmate assaults on February 4, 2017, at Columbia Correctional Institution (CCI). Additionally, Kornagay asserts that Defendants conspired to deprive him of his federal constitutional rights. As relief, he seeks compensatory, punitive and nominal damages as well as reasonable attorney's fees and costs.

---

[1] The Court dismissed Kornagay's claims against Defendants Demetris Avants and Inspector Peter Lindboe. See Orders (Docs. 68, 91).

This matter is before the Court on Defendants Diedeman and Wilburn's Motion for Summary Judgment (Motion; Doc. 83). They submitted exhibits in support of their summary judgment request. See Def. Exs., Docs. 84-1 through 84-4.[2] The Court advised Kornagay of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order (Doc. 5); Summary Judgment Notice (Doc. 85). Kornagay responded. See Response to Motion for Summary Judgment (Response; Doc. 92). He also submitted exhibits. See P. Exs., Docs. 92-1 through 92-6. Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations[3]

In the AC, Kornagay maintains that CCI corrections officers, with the knowledge and acquiescence of the prison administrators, "set up or encouraged fights between prisoners for entertainment." AC at 2-3. He asserts two causes of action under 42 U.S.C. § 1983 against Defendants. See id. at 7-9. First, Kornagay states that Diedeman and Wilburn failed to protect him when they (1) exposed him to inmates Avants and Carlton Daniels' attacks without any effort to help or call for backup; (2) permitted Avants and Daniels to "freely" enter and exit the wing during the attack; (3) "groomed" Avants to do

---

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The recited facts are drawn from the AC, the operative pleading, and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a summary judgment motion filed by Diedeman and Wilburn, the Court's recitation of the facts will focus on Kornagay's allegations as to them.

"illicit favors" for officers, and permitted him to "move freely" and enter the officers' station; (4) failed to do "cell checks or counts" for at least a two-hour period, thus "signaling" to inmates that they could do as they pleased; and (5) "popped" open cell doors at sites where Kornagay tried to hide, thus repeatedly exposing him to his "armed attackers." Id. at 7. Next, Kornagay asserts that Defendants Diedeman and Wilburn conspired when they agreed to (1) help each other commit and conceal wrongful acts; (2) coordinate and facilitate the attacks on him; (3) destroy evidence of Diedeman's extortion of him; (4) not intervene in officers and inmates' physically harmful acts towards him; (5) delay the disclosure of pertinent facts to investigators; and (6) hide, alter, and destroy evidence. Id. at 7-8.

As to the underlying facts, Kornagay avers that inmates Avants and Daniels, who were armed with homemade knives, attacked him between approximately 11:45 a.m. and 2:45 p.m. on February 4, 2017, within view of the dormitory's fixed-wing video cameras. See id. at 2. Kornagay states that Avants had called him a snitch for trying to report Diedeman for extortion. See id. at 6. He maintains that Diedeman and Wilburn "watched and cheered" the fight from the officers' station. Id. at 2. He states that when he became "overwhelmed," he asked Defendants for "help in escaping from his attackers." Id. Kornagay asserts that Diedeman responded: "You were looking like a real soldier so don't turn into a pu**y now. Go see if you can get your homeboys to help you so you can turn this thing into a two-on-two." Id. He maintains that Defendants neither called for back-up assistance nor ordered the assailants to "disarm themselves and surrender." Id. at 3. Kornagay states that Defendants "popped" open cell doors and granted his attackers

3

access to cells where he tried to take refuge three times. Id. He avers that one of the attackers boiled water with a homemade heating device and threw boiling water on him. See id. He asserts that he was stabbed fifteen times, and suffered a punctured lung, burns from scalding water, and emotional distress from the officers' "overt intervention" on behalf of the attackers. Id. at 3, 6. Kornagay maintains that Diedeman and Wilburn told him what to tell the nurses and threatened him with additional physical harm if he reported the incident. See id. at 3. He avers that Diedeman told him to report that he was stabbed behind the chow hall or he would be sprayed with chemical agents and go to confinement. See id. at 6.

According to Kornagay, Sergeant Lunsford reviewed the dormitory's surveillance video on February 4th and observed Kornagay, Avants, and Daniels in a physical altercation with weapons. See id. at 4. He avers that the incident was reported to the Office of the Inspector General on February 6th. See id. Kornagay states that he called the TIPS line on February 27th and asked for review of the video recording. See id. at 3. He also asserts that the case was "upgraded" to a criminal investigation on March 2, 2017. See id. at 4. According to Kornagay, Diedeman admitted that he was the officer who had opened the cell doors. See id. at 6. Kornagay maintains that when Inspector Vann took over Inspector Lindboe's investigation on August 14, 2017, the video recording had "disappeared." Id. He contends that Inspector Lindboe "destroyed" the video recording and conspired with Diedeman and Avants to cover up Diedeman's extortion and failure to protect. Id.

4

### III. Summary Judgment Standard

Rule 56 instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[4] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

5

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), in order to discharge this initial responsibility." Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d 1290, 1294 (11th Cir. 1998). Instead, the moving party simply may demonstrate "that there is an absence of evidence to support the nonmoving party's case." Id.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

**IV. Summary of the Arguments**

In the Motion, Defendants Diedeman and Wilburn assert that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in their favor as to Kornagay's Eighth Amendment claims against them. See Motion at 4-10. They maintain that there is "no record evidence" showing that a constitutional violation took place in their presence or that they refused to intervene. Id. at 5. In his Response, Kornagay requests that the Court deny the Motion. Additionally, he contends that Defendants filed their Motion in bad faith in violation of Federal Rule of Civil Procedure 56(h). See Response at 17, 22.[5] He therefore urges the Court to use its inherent power as well as the authority of Rule 56(h) to impose sanctions upon Defendants Diedeman and Wilburn. See id. at 17.

**V. Analysis[6]**

**A. Eighth Amendment Failure to Protect**

Kornagay asserts that Defendants Diedeman and Wilburn violated his Eighth Amendment right when they failed to protect him from inmate assaults on February 4, 2017.[7] See AC at 7. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that

---

[5] Federal Rule of Civil Procedure 56(h) provides, in pertinent part: "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result."

[6] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

[7] Although the AC appears to include an allegation of a failure to intervene, in his

7

(1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Id. at 828 (citations omitted). The deliberate indifference standard requires the plaintiff to demonstrate that the prison official "was subjectively aware" of a risk of harm; mere negligence is insufficient. Id. at 829, 835-36. In a case where the prisoner-plaintiff repeatedly asked to be transferred because he was concerned about a general lack of safety in his cell block, the Eleventh Circuit explained the requirement of deliberate indifference to a substantial risk of harm as follows:

---

Response, Kornagay clarifies that his claim against Defendants is one of a failure to protect, not a failure to intervene. See Response at 18 n.6.

> To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."[8]
>
> **The first element** of deliberate indifference — whether there was a substantial risk of serious harm — is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."[9] **The second element** — whether the defendant was deliberately indifferent to that risk — has both a subjective and an objective component. Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference."[10] Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act.[11] **Finally**, the plaintiff must show a "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury.[12]

Marbury v. Warden, 936 F3d 1227, 1233 (11th Cir. 2019) (emphasis added); Johnson v. Bessemer, Ala., City of, 741 F. App'x 694, 698-99 (11th Cir. 2018) (per curiam).

The Eleventh Circuit has explained:

> Proof of deliberate indifference requires a great deal more than does proof of negligence: "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[8] Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016).

[9] Lane, 835 F.3d at 1307.

[10] Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007).

[11] Rodriguez, 508 F.3d at 620.

[12] Rodriguez, 508 F.3d at 622-23.

9

> substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[13]
>
> In other words, a plaintiff in [Kornagay]'s position must show not only that there was a substantial risk of serious harm, but also that [Defendants] "subjectively knew of the substantial risk of serious harm and that [they] knowingly or recklessly disregarded that risk." Hale, 50 F.3d at 1583 (alteration omitted) (internal quotation marks omitted).[14] Whether prison officials had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard - and the subjective awareness required by it - is far more onerous than normal tort[-]based standards of conduct sounding in negligence: "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). And[,] needless to say, to defeat a motion for summary judgment, [a plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252. . . .

Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (emphasis deleted); Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (stating that a plaintiff who claims deliberate indifference must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence"); Scott v. Miami Dade Cty., 657 F. App'x 877, 883 (11th Cir. 2016) (stating

---

[13] Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313 (11th Cir. 2005).

[14] Hale v. Tallapoosa Cty., 50 F.3d 1579 (11th Cir. 1995).

that "a plaintiff must allege facts that would allow a jury to conclude that: the defendant actually knew that the plaintiff faced a substantial risk of serious harm" (subjective component), and "the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner" (objective component)); Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990) ("The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference.").

Prison officials may avoid Eighth Amendment liability in one of three ways: (1) showing that they were not subjectively aware "of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but believing the danger was "insubstantial or nonexistent"; or (3) claiming they responded reasonably to a known substantial danger. Rodriguez, 508 F.3d at 617-18 (quoting Farmer, 511 U.S. at 844) (internal quotations omitted).

Defendants Diedeman and Wilburn assert that they are entitled to summary judgment as to Kornagay's Eighth Amendment deliberate indifference claims against them. They contend that they were unaware of a substantial danger of physical harm because Kornagay never alerted them that he was in danger. Thus, the subjective knowledge requirement is at issue. In support of their position, see Def. Exs., Defendants submitted selected portions of: (1) Kornagay's deposition, see Doc. 84-1; (2) Diedeman's deposition (Diedeman Depo.), see Doc. 84-2; (3) Wilburn's deposition (Wilburn Depo.), see Doc. 84-3; and (4) Lindboe's deposition, see Doc. 84-4. Defendants Diedeman and

11

Wilburn maintain that Kornagay was "an armed willing participant" in the altercation and never made them aware that he was in danger and needed help. Motion at 7; see Diedeman Depo. at 7; Wilburn Depo. at 6. They assert that the fight had subsided when they entered the dormitory to conduct a count, and that Kornagay thereafter chose to confront his assailants again. See Motion at 7. In their depositions, they asserted that they neither saw Kornagay involved in an altercation on February 4, 2017, nor cheered for any of the participants during the incident. See Diedeman Depo. at 7; Wilburn Depo. at 6. Further, Diedeman testified that he never asked Kornagay to buy him anything from the canteen. See Diedeman Depo. at 6-7.

To satisfy the subjective knowledge requirement, a plaintiff must show that a prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Whether a prison official "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from the circumstantial evidence." Rodriguez, 508 F.3d at 617 (emphasis in original). Thus, to defeat the Motion, Kornagay is required to present evidence to show that there is a genuine issue for trial. In opposing Defendants' Motion, Kornagay states that a jury could reasonably find that Defendants Diedeman and Wilburn failed to protect him from inmate assaults that day. See Response at 18-20. He submitted the following exhibits, see P. Exs., in support of his position: (1) Overall Inmate Records for Avants, Daniels, and Kornagay, see Doc. 92-1; (2) Kornagay's deposition (P. Depo.), see Doc. 92-2; (3) Lindboe's deposition, see Doc. 92-3; (4) Expert Witness Report of Ron McAndrew, see

Doc. 92-4; (5) TIPS Call Summary, see Doc. 92-5; and (6) FDOC Investigative Report (Lunsford Report), see Doc. 92-6. He maintains that Diedeman was present in the officers' station during the altercation among the inmates, that Wilburn was present during part of the attacks, and that Diedeman unlocked the cells to give the attackers access to him as he tried to take refuge and protect himself. See Motion at 3-4; P. Depo. at 8-9, 12, 15; Avants' Statement (Doc. 80-1) at 54, 58. At deposition, Kornagay testified that he explained his "fears" to Diedeman and Wilburn and asked them for help, to no avail. P. Depo. at 12. Kornagay called the TIPS line and reported the attack on February 27, 2017. See AC at 3. He described the altercation, in pertinent part:

> The incident that I'm about to report can be verified by the video recordings in F Dorm, Wing 3 at approximately 11:45 am through 2:45 pm, at Columbia Correctional Institution, on February 4th, 2017. These recordings are recorded over every 30 days; therefore, I ask that this video recording be preserved and reviewed immediately. On the mentioned date and time, I found myself in a knife-fight against two inmates. **This battle lasted over two hours, while the dorm sergeant and officer watched, cheered, and facilitated the battle. Over time, I became overwhelmed with the battle and requested help from these officers, but no avail.** I was forced back into the wing, where I was dashed with boiling hot water, so I ran and locked myself in the cell. My enemies told the officers to open my cell door, and the officers complied. I made it to another c[e]ll, and locked my [sic] . . . the door, and the officers unlocked the door again. For the third time, I made it to another cell and locked the door, and for the third time, the officers opened the door for the two men standing outside the door with knives in their hands. This resulted in me being stabbed 13 times and having my left lung pierced. At no time[] did these officers try to call for back-up or do anything to help me. . . .

TIPS Call Summary (emphasis added); see Lunsford Report (providing a chronology of Kornagay's encounter with Avants and Daniels based on Lunsford's review of the video

13

surveillance recording).

Defendants Diedeman and Wilburn's denials of Kornagay's testimony and evidence provide no basis on which to grant summary judgment in their favor. In ruling on a motion for summary judgment, a court cannot engage in impermissible credibility determinations. See Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1304 (11th Cir. 2016); see also Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (stating that, in a motion for summary judgment, it is improper to simply attack the opposing party's credibility); Hall v. Bennett, 447 F. App'x 921, 924 (11th Cir. 2011) (reversing the district court's grant of summary judgment because the court improperly "weighed the witnesses' credibility by favoring" the officer's account over the prisoner-plaintiff's). As such, given the conflicting factual accounts as to whether Defendants were aware of a substantial danger of physical harm to Kornagay, Defendants' Motion is due to be denied as to Kornagay's failure to protect claims against Defendants Diedeman and Wilburn.

## B. Conspiracy

Next, Kornagay asserts that Defendants conspired when they agreed to violate Kornagay's Eighth Amendment right. See AC at 7-8. The Eleventh Circuit has stated:

> Conspiring to violate another person's constitutional rights violates section 1983. Dennis v. Sparks, 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled in part on other grounds by Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996). To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants "reached an understanding to violate [his] rights." Strength, 854 F.2d at 425 (quotation omitted). The plaintiff does not have to produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990), but must show

14

> some evidence of agreement between the defendants. Bailey v. Bd. of County Comm'rs of Alachua County, 956 F.2d 1112, 1122 (11th Cir. 1992) ("The linchpin for conspiracy is agreement, which presupposes communication."). For a conspiracy claim to survive a motion for summary judgment "[a] mere 'scintilla' of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-84 (11th Cir. 2002). Additionally, to state a claim for conspiracy, a complaint must contain more than just vague and conclusory accusations. It is insufficient "to simply aver in the complaint that a conspiracy existed." Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 840-41 (11th Cir. 2014) (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)). Thus, conclusory accusations with little to no factual allegations are not sufficient to state a claim for conspiracy.

Defendants deny that they conspired to violate Kornagay's Eighth Amendment right. They maintain that Kornagay neither asserts the material facts necessary to establish a conspiracy nor provides substantial evidence of an agreement or understanding. See Motion at 9. Notably, for Kornagay's conspiracy claim to survive Defendants' request for summary judgment, a mere scintilla of evidence will not be sufficient. Instead, "there must be enough of a showing that the jury could reasonably find for [Kornagay]." See Rowe, 279 F.3d at 1284 (citation omitted). Kornagay has provided enough evidence so that a jury could reasonably find for him at trial. As such, Defendants' Motion is due to be denied as to Kornagay's conspiracy claim against them.

Therefore, it is now

**ORDERED**:

1. Defendants Diedeman and Wilburn's Motion for Summary Judgment (Doc. 83) is **DENIED**.

2. Plaintiff's request for Rule 56(h) relief, see Response at 17, 22, is **DENIED without prejudice**.[15]

3. The parties must confer in good faith to discuss the issues and the possibility of settlement. **No later than December 31, 2019**, they must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must notify the Court if they want to have the case referred to a United States Magistrate Judge for a settlement conference.

4. In light of the Court's resolution of Defendants Diedeman and Wilburn's Motion for Summary Judgment (Doc. 83), the extended deadline for filing motions to dismiss and/or for summary judgment is **VACATED**. Although the parties may file motions

---

[15] The Court notes that a request for affirmative relief is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b); see also Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)). If Plaintiff seeks to pursue such relief, he must file a separate motion after conferral as required by the Local Rules of this Court.

related to discovery disputes, if warranted after conferring in an attempt to resolve any such issues, no further dispositive motions will be permitted.[16]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of November, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 11/6
c:
Counsel of Record

---

[16] The deadline for dispositive motions was previously extended at the request of Defendant Lindboe. As he is no longer a defendant in the case and Defendants Diedeman and Wilburn's dispositive Motion for Summary Judgment has been adjudicated, there is no longer any need for an additional or extended dispositve motion deadline.